MARY ANN PENDLETON *et al.*, Respondents, v. WILLIAM H. BELL, Appellant.

*Conveyance—Marriage Settlement—Power.*—In view of marriage, property was conveyed by settlement and contract by the intended wife, to trustees, to hold, until marriage to the use of the grantor and her heirs, and from the marriage to the sole and separate use, benefit and disposal of the wife for and during her natural life, free of her husband's control, &c., and to such uses as the said wife might by writing, &c., direct and appoint; and on her death to such uses as she by will might appoint and direct; and if she died intestate, to the use of the issue of the marriage then living; and in default of such issue, to the use of the heirs of said wife. The deed further provided that all the property might from time to time be successively charged, invested and reinvested indefinitely by the trustees on the request in writing, &c., of the wife. *Held*, that the wife, with the trustees, could, by proper conveyances, pass the fee of the lands settled by the deed, and that she was not confined to the disposal of her life estate only.

*Appeal from St. Louis Land Court.*

The terms of the deed are set out in the opinion of the court.

*B. A. Hill, A. Burwell,* and *C. D. Colman,* for appellant.

The questions presented in the case were argued at length, in a written argument by B. A. Hill, Esq., counsel for appellant, and other parties interested in the question. As the court does not put its decision upon any technical grounds depending upon the use of mere terms, but bases its opinion upon the general intent of the deed, we give only the points presented by Mr. Hill, with reference to the authorities cited.

I. By the marriage settlement, the real estate was granted to trustees, and after the marriage the *cestui qui trust,* Mrs. Pendleton, was seized of an estate tail by virtue of the limitations thereon, which, by the operation of R. C. 1845, c. 32, became an estate for life, with remainder to issue of marriage, who became on their births respectively entitled to a vested estate in fee simple, and will take as purchasers on her decease, if their title be not divested by will. (R. C. 1845, c. 32, § 5, p. 219.)

By section 9 of the same statute, a freehold estate of inheritance may be made to commence *in futuro* by deed, in like manner as by will.

Mrs. Pendleton, then, merely took an estate for life, (with a fee simple expectant,) even if that statute be left out of consideration, and she has no power of appointment beyond her life estate. Godolphin v. Godolphin, 1 Ves. 521, Liefe v. Saltingstone, cited Sand. on U. & T., 2 Am. ed., p. 123, states a case similar to this. It is presumed the children take as tenants in common by force of the statute.

It is observable that the power of appointment by writing, &c., is not made to take effect after the determination of the life estate, &c., nor is the life estate made determinable on the appointment, but it seems to be a part of the clause reserving the estate to her separately for life, and therefore extending to her life estate only.

Again : the next remainder is, and in the event of her dying intestate, the whole property is absolutely and positively to go to the issue, not "subject to any appointment already made," nor "so far as such appointment shall not extend," but absolutely to go to the issue of the marriage, and in default, to the right heirs of Mrs. Pendleton. There is, therefore, no way by which a good title can be made to a purchaser, except by a deed executed by Mrs. Pendleton and the issue of the marriage after they come of lawful age, or otherwise after the death of all the children and her husband.

Mrs. Pendleton has only an estate for life. (Bradley v. Wescott, 13 Ves. 445 ; Lockett v. Wray, 4 Bro. C. C. 486, n. 71 & 59 ; Crabb on Real Prop., § 983, with power of disposal of the inheritance sub modo—that is, by last will, &c. ; Grigsby v. Cox, 1 Ves., 517 ; Sto. Eq., J., p. 828, n. 2, 4 ed. ; Reid v. Shergold, 10 Ves. 370 ; Anderson v. Dawson, 15 Ves. 532; Tomlinson v. Dighton, 1 P. Wms. 149 ; Nannoch v. Horton, 7 Ves. 392; Daniel v. Upton, Noys, R. 80 ; 1 P. Wms. 159 ; 1 Sir Wm. Jones, 137.)

Even if it be contended that immediately after the marriage Mr. and Mrs. P. may have avoided the contingent remainder by a conveyance before the birth of issue, it cannot be contended that it could be done after the contingency had happened, and the issue were born, being in vested estates as purchasers *per formam doni*, as well as by the statute of 1845. In this case, the settlement was for the benefit of the issue of the marriage as well as for the husband and wife. (4 Kent, 535 ; Jackson v. Coleman, 2 J. R. 391 ; Herrick v. Babcock, 14 J. R. 389 ; case of Flintham, 11 S. & R. 16.) The consideration runs through the whole settlement, and when the provision is once made no event can afterward alter it. The consideration of the marriage protects it. (Nairn v. Prouse, 6 Ves. Jr. 759 ; Neusted v. Searles, 2 Vern. 281 ; Brown v. Jones, 1 Atk. 188 ; Gorin v. Nash, 3 Atk. 189, and cases there cited ; Johnson v. Legard, 6 M. & S. 60, and cases cited ; Magneac v. Thompson, 7 Pet. 349 ; Bradish v. Gibbs, 3 J. C. R. 523 ; Verplanck v. Sterry, 12 J. R. 536 ; S. C., 1 J. C. R. 261 ;

Pendleton v. Bell.

Whelan v. Whelan, 3 Cow. 579; Turner v. Tregevant, 2 Dessaus. 264; Gasset v. Grout, 4 Metc. 486; Betts v. Wn. Bnk. of Maryland, 1 Har. & G. 175; Sterry v. Arden, 1 J. C. R. 261; Osgood v. Strode, 2 P. Wms. 245; Taylor v. Heriot, 4 Dessaus. 327; Bank v. Brown, Riley, Ch. 131; Duffy v. Ins. Co., 8 Watts & S. 413; Harrison v. Carroll, 11 Leigh, 476.)

II. The power to charge and reinvest contained in the deed does not give the power to dispose of the fee as claimed by the plaintiffs.

The rule is well settled " that a general power may be restrained to a particular purpose where the intention of the parties requires such a construction. (Ld. Hinchinbrock v. Seymour, 1 Bro. C. C. 395; Earl of Tankerville v. Coke, Mos. 146; 1 Sugd. Pow., 455, 527, 529.)

This is not a power in gross; it is collateral. If it be an indefinite power, it would be void. It was designed to increase that trust estate, not to diminish it. (Sugd. Pow., 54, § 4, & p. 533, § 1–6.)

The power to charge indefinitely would be void as against the marriage consideration, and the issue who take as purchasers. (Mildmay's case, 1 Coke, 176, 6; Roe v. Dent, 2 Wilson, 336.) *

*A. Burwell*, for appellant, presented a written argument.

*T. T. Gantt*, for respondent.

It appears that the only question for the Supreme Court is, whether by the terms of the deed of February 7, 1853, Mrs. Pendleton and her trustees can, by any form of conveyance, make a title in fee to the purchaser of any part of this land?

---

* It is questionable whether the English cases upon this subject are applicable to conveyances under our statute, (R. C. 1845, p. 219,) as by section 2, it would appear that the presumption of law is that the fee is conveyed, and that without the use of the word " heirs," unless the contrary intention appear by express terms or necessary implication; while, by the English law, the presumption is that the estate is limited, unless the intent to pass the fee be expressed.—Rep.

It must be borne in mind that up to the execution of this deed, Mrs. Coxe (now Mrs. Pendleton) was seized in fee of the land in controversy; and that the object of the deed of settlement was to secure to her sole and separate use the enjoyment and power of disposal of this land, and to exclude her intended husband from all marital rights over it. This intention is apparent. It only remains to be seen whether there are apt words to effectuate it.

The legal title is vested in the trustees and their heirs "to the uses, on the trusts, for the intents and purposes, and by, with, under and subject to the powers, provisos and agreements hereinafter limited, expressed and declared, of and concerning the same; that is to say, to the use of the said party of the second part (Mrs. Coxe, now Mrs. Pendleton), her heirs and assigns, until the said intended marriage shall be had and solemnized; and from and immediately after the solemnization thereof, to the sole and separate use, benefit and disposal of the said party of the second part, for and during her natural life, free from any control by, or liableness for, or on account of, her said intended husband, and to such uses as the said party of the second part may at any time or times thereafter, by any writing, signed with her hand, in the presence of two or more credible witnesses, direct and appoint; and on her death, to such uses as she may, by her last will and testament, duly made and executed, direct and appoint; and in the event of her dying intestate, to the use of the issue then living of the said hereby intended marriage; and in default of such issue, then to the use of the right heirs of the said party of the second part." * * * "And this indenture, and the estate created by the same, is hereby made subject to this other and further condition and trust, namely, that all or any of the property and effects whatsoever, constituting or to constitute the said trust estate, shall and may be, from time to time, and successively charged, invested and reinvested indefinitely by the said trustees, on the sole and separate request made in writing, (attested by two or more credible witnesses,) of the said party of the second part, and that each and every thus

newly acquired accession to the aforesaid trust estate shall be subject to the uses hereinbefore limited and declared."

The defendant in error submits the following propositions, viz :

1. That the first use limited upon the estate in the hands of the trustees, after the solemnization of the marriage, is for " the sole and separate use, benefit and disposal of the party of the second part (Mrs. Pendleton) during her natural life, free from all control or liability for or on account of her said intended husband."

2. That there is a power of disposal in fee annexed to this estate for life, as indicated by the words which follow : " and to such uses as the said party of the second part may at any time or times hereafter, by any writing, signed with her hand, in the presence of two or more credible witnesses, direct and appoint."

3. That the general power " from time to time to charge, invest and reinvest indefinitely all or any of the property and effects constituting or to constitute the said trust estate," is, without more, amply sufficient to authorize the sale of any of it in fee.

The language quoted from the deed in the third proposition submitted by defendant in error, by which the trustees are authorized " on the sole and separate request, &c., of Mrs. Pendleton, to charge, invest, and reinvest indefinitely," all or any part of the trust estate, seems to have been chosen on purpose to signify the intention of Mrs. Pendleton to reserve the fullest power of altering the form of the trust property, or disposing of it during her life-time.

She has an " indefinite," that is to say, an *unlimited* power to charge the trust estate or any part thereof. Of course, this admits of her charging it to its full value ; which, to any common apprehension, is equivalent to selling it in fee ; that is, disposing of the highest estate in it which the law recognizes, and realizing the highest value therefor. This, it is submitted, there would be no difficulty in understanding if the matter were *res nova.* But the case has frequently arisen before,

and has been uniformly decided as now contended by defendant in error.

An indefinite power to charge is a power to sell in fee. (Long v. Long, 5 Ves., p. 445; 1 Sugd. on Powers, 508 and following; 2 Vernon 153, Wareham v. Brown.)

It is believed unnecessary to accumulate authorities on so plain a point. But it is decisive of the controversy.

Again: the power to "invest and reinvest indefinitely the whole or any part of the trust estate," can only mean the power to change the form of the investment at the pleasure of Mrs. Pendleton. She may at her discretion direct all the real estate to be converted into money, or all the money to be converted into real estate. It would be a waste of time to argue or cite authorities to prove that power to do these things presupposes power to sell the real estate outright, that is, in fee.

BATES, Judge, delivered the opinion of the court.

The only question to be considered in this case is as to the power of Mrs. Pendleton and her trustees to convey in fee portions of the real estate held by the trustees of her marriage settlement. The deed of marriage settlement, executed in the city of Washington, on February 7, 1853, is, in all its parts, material to be here set forth, as follows:

"This indenture, made this 7th February, in the year 1853, between William A. Pendleton, of the county of Caroline, Virginia, of the first part, Mary Ann Coxe, of the city of St. Louis, Missouri, of the second part, and Richard Bland Lee, &c., and Thomas T. Gantt, of, &c., of the third part. Whereas, a marriage is agreed on and intended to be solemnized between the party of the first part and the said party of the second part, and on the treaty of said marriage it was agreed by and between them that all the property of any kind whatsoever, &c., of the said party of the second part, which she has, or which may at any time hereafter, before or during her coverture, fall to her by gift, devise, inheritance, in course of distribution or otherwise howsoever in her own right, should

Pendleton v. Bell.

be conveyed, assigned, settled, and allowed to her sole and separate use during her coverture, free from any control by, or liableness for or on account of her said intended husband, and subject to be disposed of by her appointment or direction as hereinafter provided; and whereas, also, the said party of the second part is seized and possessed of certain lands, tenements and hereditaments, situate, lying and being in the State of Missouri and elsewhere, among which are the following lots of ground in the aforesaid city of St. Louis, that is to say: (here follows a description of real estate.) Now, this indenture witnesses, that, in pursuance and in part performance of the said agreement made as aforesaid on the aforesaid treaty of marriage, and in consideration, &c., the said party of the second part, by and with the consent, &c., has granted, bargained and sold, aliened, released, assigned, transferred, conveyed and confirmed, and hereby does grant, &c., &c., to the said parties of the third part and the survivor of them, and the heirs, &c., of such survivor, all and singular the hereinbefore mentioned lands, tenements and hereditaments, estate and rights of the said party of the second part, &c., &c., to have and to hold with all, &c., &c., to the said parties of the third part, &c., &c. But nevertheless to the uses, on the trusts, for the intents and purposes, and by, with, under and subject to the powers, provisos, declarations and agreements hereinafter limited, expressed and declared of and concerning the same; that is to say, to the use of the said party of the second part, her heirs and assigns, until the said intended marriage shall be had and solemnized, and, from and immediately after the solemnization thereof, to the sole and separate use, benefit and disposal of the said party of the second part for and during her natural life, free from any control by or liableness for or on account of her said intended husband, and to such uses as the said party of the second part may at any time or times hereafter, by any writing, signed with her hand, in the presence of two or more credible witnesses, direct and appoint; and on her death, to such uses as she may by her last will and testament, duly made and executed,

direct and appoint; and in the event of her dying intestate, to the use of the issue then living of the said hereby intended marriage; and in default of such issue, then to the use of the right heirs of the said party of the second part." * * * " (B.) And this indenture, and the estate created by the same, is hereby made subject to this other and further condition and trust, namely, that all or any of the property and effects whatsoever constituting or to constitute the said trust estate, shall and may be from time to time successively charged, invested and reinvested indefinitely by the said trustees, on the sole and separate request made in writing, attested by two or more credible witnesses of the said party of the second part, and that each and every thus newly acquired accession to the aforesaid trust estate shall be subject to the uses hereinbefore limited and delared." * * * " In testimony whereof," &c.

In considering this question, it is proper to inquire—Firstly, what is the general object and intent of the whole instrument? The preamble evidently contemplated that the (then) future wife should, by means of her trustees, have as absolute dominion, in effect, over her estate as if she should remain unmarried, as well to dispose of it as to use it. The statement that the disposal of the property is to be " as hereinafter provided," is not a limitation upon the power of disposal, but only a reference to the following parts of the deeds for directions as to the manner of disposing of the trust property. The deed, then, vests the legal title in the trustees to the use, first, of Mrs. Coxe (now Mrs. Pendleton) until the marriage be solemnized, and after that, second, to her sole and separate use, benefit and disposal for her life, and to such uses as she may at any time or times direct and appoint, and, on her death, to such uses as she may by last will direct and appoint, and if she die intestate, to the use of the issue of the intended marriage, and, in default of such issue, to the use of her right heirs.

The trustees were also authorized, upon her request, to charge, invest and reinvest indefinitely the trust property. The execution of this last power might result in the aliena-

tion in fee of the whole or parts of the trust property. The whole deed shows an intention to place the property in such condition that it could be disposed of at the pleasure of Mrs. Pendleton. It is contended, however, that apt words to express that intention are not used in the instrument, but, on the contrary, such words are used as vest in Mrs. Pendleton only a life estate in the use, with the power of appointment for her life estate only.

The property is held in trust for her sole and separate use, benefit and disposal during her natural life. Were this clause the only one which specifically gave to the wife a power to dispose of the property, it might well be questioned whether it extended beyond her life; but that it does authorize her to dispose of the estate for her life cannot be doubted. The next clause of the deed declares that the property shall be held to such uses as she may at any time or times direct and appoint. These words are sufficiently broad to comprehend the largest estate in the property, and if they be restricted to apply only to her life estate, they really mean nothing, as the power to dispose of that is already granted. They do mean something, and that meaning must be what they plainly express, that Mrs. Pendleton may appoint the whole use—that is, absolutely and forever, or in fee. The next clause of the deed, by the use of similar language, gives her power to appoint uses by her last will, and no one questions or can doubt but that this extends to the fee. It is thus perfectly evident that she was not to be wholly restrained from appointing a use in fee, and no causes appear why she may not do it during her life, as well as by will, to take effect after her death.

Did any doubt remain as to the general intent of the deed of settlement, it would be solved by reference to the very comprehensive terms in which the husband covenants to permit and suffer the wife " to use, enjoy, possess, control, give, grant and dispose of her said separate estate as she shall think fit in her life-time, and that it shall be lawful for her, during her coverture, by her last will and testament, to devise, bequeath

and dispose of the whole or any part of the property, estate, interest and rights hereby conveyed, of every kind whatsoever, wherever situate, and whether in possession or possibility, and that such last will and testament shall be good and available in law, the consent of the said party of the first part thereto being hereby declared."

Mrs. Pendleton and her trustees can, by proper instruments, convey in fee, and, as that is the only question submitted to the court, no opinion is given as to the character and form of the instruments necessary to effect that purpose.

Judgment affirmed.   Judges Bay and Dryden concur.